**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x

JOSEPH EBIN and YERUCHUM JENKINS, individually and on behalf of all others similarly situated,

Plaintiffs,

-against-

KANGADIS FAMILY MANAGEMENT LLC, ARISTIDIS KANGADIS a/k/a "MR. ARIS", ANDROMAHI KANGADIS a/k/a "MRS. MAHI", and THEMIS KANGADIS,

Defendants.

-------------------------------------------------------x

Civil Action 1:14-cv-1324 (JSR)

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT**
**<u>OF MOTION TO DISMISS THE SECOND COMPLAINT</u>**

**KLESTADT & WINTERS, LLP**
Tracy L. Klestadt
John E. Jureller, Jr.
Lauren C. Kiss
570 Seventh Avenue, 17th Floor
New York, NY 10018
Telephone: (212) 972-3000
Facsimile: (212) 972-2245

*Attorneys for Defendants*

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........................................ iv

PRELIMINARY STATEMENT ........................................ 1

FACTUAL BACKGROUND ........................................ 3

A. The Related Action ........................................ 3

B. The Instant Action ........................................ 4

C. The Second Complaint ........................................ 5

STANDARD OF REVIEW ........................................ 8

ARGUMENT ........................................ 9

I. The Law of the Case Doctrine Precludes the Prosecution of the Second Complaint ............ 9

II. The Bankruptcy Court Has Already Decided that the Alter Ego and Veil-Piercing Claims are Stayed ........................................ 12

III. All "Direct Claims" Against Themis and Mr. Aris Individually Must be Dismissed ....... 13

A. The Breach of Express Warranty and Implied Warranty of Merchantability Claims Against Themis and Mr. Aris Must be Dismissed ........................................ 13

(a) Plaintiffs cannot maintain breach of express warranty claims against Themis and Mr. Aris where they did not make any express warranty ........ 13

(b) Plaintiffs cannot maintain breach of implied warranty of merchantability claims against Themis and Mr. Aris where they were not the seller of the goods and the goods were fit for human consumption ........................................ 14

(c) The participation theory does not apply ........................................ 16

B. The Claims for Violation of NY GBL § 349 and NJ CFA Against Themis and Mr. Aris Must be Dismissed ........................................ 17

(a) Plaintiffs cannot maintain claims for violation of NY GBL § 349 against Themis and Mr. Aris where they made no misrepresentations ....... 17

(b) Plaintiffs cannot maintain claims for violation of the NJ CFA against Themis and Mr. Aris where they made no misrepresentations. ...... 17

C. The Negligent Misrepresentation and Fraud Claims Against Themis and Mr. Aris Must be Dismissed....................18

(a) Plaintiffs cannot maintain negligent misrepresentation claims against Themis and Mr. Aris where (i) there was no special relationship under New York law; and (ii) there was no independent duty under New Jersey law requiring disclosure....................18

(b) Plaintiffs failed to plead the negligent misrepresentation and fraud claims against Themis and Mr. Aris with particularity....................20

(c) The commission of the tort doctrine and tort participation theory do not apply....................23

IV. By Filing the Class Claim, Plaintiffs have Consented to the Jurisdiction of the Bankruptcy Court to Hear and Determine the Class Claim Against KFI in the First Instance....................24

CONCLUSION....................25

# TABLE OF AUTHORITIES

**Cases:**

*Acito v. IMCERA Group, Inc.*,
47 F.3d 47 (2d Cir. 1995).......... 21

*Alexander v. CIGNA Corp.*,
991 F. Supp. 427 (D. N.J. 1998).......... 20

*Allen v. V & A Bros., Inc.*,
208 N.J. 114 (2011).......... 18

*Am. Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*,
CIV. 11-1279 (MLC), 2011 WL 3022243 (D. N.J. July 22, 2011).......... 16

*Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011).......... 15

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).......... 8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).......... 8

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991).......... 8

*Dimon, Inc. v. Folium, Inc.*,
48 F. Supp. 2d 359 (S.D.N.Y. 1999).......... 19, 20

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*,
375 F.3d 168 (2d Cir. 2004).......... 21

*Fiber Consultants, Inc. v. Fiber Optek Interconnect Corp.*,
15 A.D.3d 528, 792 N.Y.S.2d 89 (2d Dept't 2005).......... 10

*Frederico v. Home Depot*,
507 F.3d 188 (3rd Cir. 2007).......... 21

*H. Rosenblum, Inc. v. Adler*,
93 N.J. 324, 461 A.2d 138 (1983).......... 20

*Hart v. Jassem*,
43 A.D.3d 997, 843 N.Y.S.2d. 121 (2d Dep't 2007).......... 10

*Henderson v Volvo Cars of N. Am., LLC*,
CIV. 09-4146 (DMC), 2010 WL 2925913 (D.N.J. July 21, 2010).......................................... 20

*Home Buyers Warranty v. Roblyn Dev. Corp.*,
No. A-0500-05T5, 2006 WL 2190742 (N.J. App. Div. Aug. 4, 2006).................................... 16

*Hydro Investors, Inc. v. Trafalgar Power Inc.*,
227 F.3d 8 (2d Cir. 2000)........................................................................................................ 19

*In re Adler*,
494 B.R. 43 (Bankr. E.D.N.Y. 2013)....................................................................................... 12

*In re Gerber Probiotic Sales Practices Litig.*,
CIV. 12-835 (JLL), 2014 WL 1310038 (D. N.J. Mar. 31, 2014) ............................................ 15

*In re Manville Forest Prods. Corp.*,
896 F.2d 1384 (2d Cir. 1990).................................................................................................. 25

*In re PCH Assocs.*,
949 F.2d 585 (2d Cir. 1991)...................................................................................................... 9

*In re Pitts*,
Adv. No. 809-8230 (REG), 2009 WL 4807615 (Bankr. E.D.N.Y. Dec. 8, 2009).................... 12

*In re S.G. Phillips Constructors, Inc.*,
45 F.3d 702 (2d Cir. 1995)...................................................................................................... 24

*Kimmell v. Schaefer*,
89 N.Y.2d 257 (N.Y. 1996) ..................................................................................................... 19

*Lasky v. Shearson Lehman Bros. Inc.*,
139 F.R.D. 597 (S.D.N.Y. 1991) ............................................................................................. 21

*Lieberson v. Johnson & Johnson Consumer Cos.*,
865 F. Supp. 2d 529 (D. N.J. 2011) ......................................................................................... 15

*Mendez v. City of New York*,
259 A.D.2d 441, 687 N.Y.S.2d 346 (1st Dep't 1999) ............................................................. 24

*Meshinsky v. Nichol Yacht Sales, Inc.*,
110 N.J. 464 (1998) ................................................................................................................. 18

*Messinger v. Messinger*,
16 A.D.3d 562 –63, 792 N.Y.S.2d 162 (2d Dep't 2005)............................................................ 9

*Morris v. N.Y. State Dep't of Taxation and Fin.*,
82 N.Y.2d 135, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993) ............ 10

*Naughright v. Weiss*,
826 F. Supp. 2d 676 (S.D.N.Y. 2011) ............ 21

*New Hope Pipe Liners LLC v. Composites One, LLC*
CIV. 09-3222, 2009 WL 4282644 (D. N.J. Nov. 30, 2009) ............ 13

*Newman v. RCN Telecom Servs., Inc.*,
238 F.R.D. 57 (S.D.N.Y. 2006) ............ 17

*Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*,
132 B.R. 4 (S.D.N.Y.1991) ............ 24

*Paramount Aviation Corp. v. Agusta*,
288 F.3d 67 (3d Cir. 2002) ............ 14

*Peguero v. 601 Realty Corp.*,
58 A.D.3d 556, 873 N.Y.S.2d 17 (1st Dep't 2009) ............ 23, 24

*Pescatore v. Pan Am. World Airways, Inc.*,
97 F.3d 1 (2d Cir. 1996) ............ 9

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ............ 21

*Rotella v. Derner*,
283 A.D.2d 1026, 723 N.Y.S.2d 801 (4th Dep't 2001) ............ 10

*Saltiel v. GSI Consultants, Inc.*,
170 N.J. 297 (2002) ............ 16, 17, 20, 24

*Snyder v. Farnam Cos., Inc.*,
792 F. Supp. 2d 712 (D. N.J. 2011) ............ 13

*Stutman v. Chem. Bank*,
95 N.Y.2d 24, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000) ............ 17

*Suez Equity Inv., L.P. v. Toronto-Dominion Bank*,
250 F.3d 87 (2d Cir. 2001) ............ 19

*Sykes v. Mel Harris & Assocs., LLC*,
757 F. Supp. 2d 413 (S.D.N.Y. 2010) ............ 10

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007) ........ 8

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
956 F.2d 1245 (2d Cir. 1992) ........ 9

*Wood v. Wood,(In re Wood)*,
825 F.2d 90 (5th Cir.1987) ........ 25

*Yak v. Bank Brussels Lambert*,
252 F.3d 127 (2d Cir. 2001) ........ 8

*Zerman v. Ball*,
735 F.2d 15 (2d Cir. 1984) ........ 21

**Other Authorities:**

11 U.S.C. § 362 ........ 4

11 U.S.C. § 362(a) ........ 1, 2, 12

Federal Rule of Civil Procedure 9 ........ 21

Federal Rule of Civil Procedure 9(b) ........ 20, 21, 22, 23

Federal Rule of Civil Procedure 12(b)(6) ........ 1, 8

New Jersey Statutes Annotated (N.J.S.A.) § 56:8-2 ........ 18

New Jersey Statutes Annotated (N.J.S.A.) § 12A:2-313 ........ 13, 14

New Jersey Statutes Annotated (N.J.S.A.) § 12A:2-314 ........ 14, 15

New York General Business Law (NY GBL) § 349 ........ 8, 17

Defendants Aristidis Kangadis ("Mr. Aris"), Andromahi Kangadis ("Mrs. Mahi"), Themis Kangadis ("Themis") and Kangadis Family Management LLC ("KFM" and together with Mr. Aris, Mrs. Mahi and Themis, the "Defendants"), respectfully submit this Memorandum of Law in support of their motion for an order, pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6), dismissing Plaintiffs' Second Complaint[1] with prejudice.

## PRELIMINARY STATEMENT

Kangadis Food, Inc., d/b/a The Gourmet Factory ("KFI") is [redacted] business engaged in importing and distributing fine ethnic foods, and is a leading distributor of olive oil. KFI sells its products under certain brand names, including "Capatriti." On April 8, 2013, Joseph Ebin ("Ebin") and Yeruchum Jenkins ("Jenkins" and together with Ebin, the "Plaintiffs") commenced a putative class action against KFI in the United States District Court for the Southern District of New York, titled *Joseph Ebin, Yeruchum Jenkins, et al. v. Kangadis Food Inc., d/b/a The Gourmet Factory*, Civil Action No. 13-cv-2311 (JSR) (the "KFI Action"), asserting numerous causes of action relating to KFI's alleged misbranding and sale of "olive-pomace oil" as "Capatriti 100% Pure Olive Oil".[2]

On June 6, 2014, KFI filed a chapter 11 bankruptcy case in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"), under Case No. 14-72649 (the "Bankruptcy Case"), resulting in an automatic stay of the KFI Action under 11 U.S.C. § 362(a). On July 16, 2014, the Bankruptcy Court denied Plaintiffs' motion to dismiss the Bankruptcy Case or, in the alternative, grant relief from the automatic stay to permit the continuation of the KFI Action before this Court. The Bankruptcy Court also held that any veil

[1] A copy of the Second Complaint (as defined herein) is attached as **Exhibit "A"** to the accompanying declaration of John E. Jureller, Jr., Esq., dated August 12, 2014 (the "Jureller Declaration").
[2] To date, the class has not been certified by the Court in this action, and is subject to a pending contested motion. Nothing contained herein shall waive any right with respect to the class certification motion.

piercing and alter ego claims asserted in the Second Complaint were subject to the automatic stay. On July 30, 2014, Plaintiffs filed a claim (the "Class Claim") purportedly on behalf of the class in the Bankruptcy Court against KFI's estate, thereby consenting to the jurisdiction of the Bankruptcy Court for determination of the validity and amount of the Class Claim.

Despite two separate decisions of this Court denying Plaintiffs' application to permit these claims, both in the KFI Action and the instant action, holding that such claims can only be asserted *after* liability and judgment are found against KFI, Plaintiffs continue to seek to impose liability on the Defendants – [redacted] – based upon the *same facts and claims* asserted in the KFI Action and the Class Claim, but now alleged under veil-piercing or alter ego theories against these Defendants, or the same veil piercing claims asserted as purported "direct claims" against Themis and Mr. Aris.

Plaintiffs' claims must be dismissed as there is simply no legal basis to recover against these Defendants. First, this Court has already properly held that these claims against Defendants are derivative of claims being asserted against KFI in the Plaintiffs' Class Claim and can only be asserted *if and after* Plaintiffs prevail, if at all, on the claims against KFI. Plaintiffs have confused an equitable remedy with an independent cause of action and have improperly asserted a "cause of action" that does not exist in codified or common law. Although the venue has changed for determination of the Class Claim as a result of the KFI bankruptcy filing, the requirements under New York law have not. A determination of KFI's liability is absolutely necessary before this action can proceed.

Second, at the July 16, 2014 hearing, the Bankruptcy Court stated that any veil piercing and alter ego claims are subject to the automatic stay under 11 U.S.C. § 362(a). In the Second

Complaint, Plaintiffs have alleged claims under veil piercing and alter ego theories against Defendants under each of the six causes of action, and there can be no question that these claims are subject to the automatic stay. Although Plaintiffs have also asserted the same claims, without distinction, as so-called "direct claims" against Themis and Mr. Aris under each of the six causes of action, these claims are no more than veil piecing or alter ego claims and are stayed as well.

Third, even if the Court were to find that these "direct claims" were not currently subject to the automatic stay, these "direct claims" must be dismissed for failure to state a cause of action against Themis and Mr. Aris individually.

Lastly, the proper forum for hearing and determining these claims should be in the Bankruptcy Court, in which Plaintiffs' have now filed the Class Claim. To permit otherwise would result in the same claims, based upon the same facts, being simultaneously litigated in two separate forums, creating the likely possibility of different results.

## FACTUAL BACKGROUND

### A. The Related Action

In the KFI Action, after the conclusion of the discovery period, Plaintiffs on October 31, 2013 applied to the Court for leave to amend their complaint to add four (4) new party defendants, namely the Defendants in the instant action. Plaintiffs sought to hold Defendants liable on a veil-piercing theory for each of the claims already pled against KFI. By order dated November 4, 2013 (the "Nov. 4, 2013 Order"), the Court denied Plaintiffs application, holding, *inter alia*, that Plaintiffs' alter-ego claims were premature as they had not obtained any judgment against KFI to enforce on a veil-piercing theory ("*At the same time, if plaintiffs do prevail in the instant lawsuit and obtain a judgment*, they may well be able to seek collection of it against any 'alter egos' they can prove *at the time*, whether by motion and hearing or by filing a *separate*

*application.*") (emphasis added). *See* Nov. 4, 2013 Order at 2, a copy of which is annexed as **Exhibit "B"** to the Jureller Declaration.

On June 6, 2014, KFI commenced its Bankruptcy Case, at which time the automatic stay arose and operates as a stay against the continuance of any action by any creditor against a debtor or its property. *See* 11 U.S.C. § 362. As such, the KFI Action is presently stayed.

### B. The Instant Action

Despite the Court's instructions in the November 4, 2013 Order that Plaintiffs could proceed against the Defendants only if and after they prevail against KFI and actually obtain a judgment, Plaintiffs ignored that order and, on February 28, 2014, commenced an action (the "First Complaint") in this Court against the Defendants.

By Order dated April 18, 2014 (the "Apr. 18, 2014 Order"), the Court dismissed the First Complaint "without prejudice to being re-filed if otherwise appropriate upon *resolution of the related case* [the KFI Action]", closed the case, and imposed sanctions upon Plaintiffs and their counsel. *See* Apr. 18, 2014 Order (emphasis added), a copy of which is annexed as **Exhibit "C"** to the Jureller Declaration.

On June 10, 2014, after a telephone conference regarding, among other things, KFI's bankruptcy filing, the Court entered an order (the "June 10, 2014 Order") permitting Plaintiffs to re-file the First Complaint, acknowledging that its allegations were derivative of the KFI Action, but finding that the circumstances had changed, presumably due to the KFI bankruptcy filing.[3] *See* June 10, 2014 Order, a copy of which is annexed as **Exhibit "D"** to the Jureller Declaration. On June 11, 2014, Plaintiffs filed a new complaint (the "Second Complaint"), asserting virtually the same causes of action against the Defendants as alleged in the KFI Action, now under

[3] By the June 10, 2014 Order, the Court did not specify what these changed circumstances were, or how they changed the ability to assert the derivative veil piercing or alter ego claims against Defendants.

purported theories of veil piercing and alter ego, and the same claims re-alleged as "direct claims" against Themis or Mr. Aris. *See* Docket Entry 11.

**C. <u>The Second Complaint</u>**

The Second Complaint asserts causes of action against [redacted] In the Second Complaint, Plaintiffs seek to hold Defendants liable for the alleged *and yet to be proven* malfeasance of KFI. In fact, the Second Complaint itself asserts that its purpose is to ensure Plaintiffs can "collect on the judgment they will eventually obtain" against KFI. *See* Jureller Decl., Ex. A (Second Complaint) at ¶ 2.

Plaintiff Ebin, a citizen of New York, alleges that he purchased a single 101 fl. oz. tin of Capatriti from an unidentified "local grocery store" sometime in "late 2012." *Id.* at ¶ 9. Ebin alleges he paid "approximately $16.49" for that single tin of Capatriti. *Id.*[4] Plaintiff Jenkins, a citizen of New Jersey, alleges that he also purchased a single tin of Capatriti from an unidentified "local grocery store" sometime in "early 2013." *Id.* at ¶ 10. Jenkins does not allege how much he paid for his tin of Capatriti.[5]

Plaintiffs allege that Capatriti's label warrants that it contains "100% pure olive oil." *Id.* at ¶¶ 9, 10. Plaintiffs further allege that they relied upon that purported warranty when deciding to purchase Capatriti. *Id.* Plaintiffs then allege that Capatriti does not contain "100 % pure olive oil," as stated on its label, but instead contains olive-pomace oil. *Id.* at ¶¶ 53–54. Based on this,

[4] Since discovery has been mostly completed under the KFI Action, it is important to note that both Plaintiffs have admitted that neither has possession of any receipts related to the purchase, or possession of the product, or completed any test on the product that they purportedly purchased.

[5] [redacted]

Plaintiffs claim they were financially harmed in that they paid more for Capatriti based on its label than they otherwise would have for pomace products. *Id.* at ¶ 7.

Plaintiffs allege that Mr. Aris [redacted]

[redacted]

[redacted]

[redacted]

The Second Complaint further states that Mr. Aris [redacted]

As to Themis, the Second Complaint alleges that [redacted]

As to Mrs. Mahi, the Second Complaint states that she is [redacted] There are no further facts alleged as to Mrs. Mahi related to the purported claims. The Second Complaint alleges that KFM [redacted] There are no further facts alleged as to KFM related to the purported claims.

The Second Complaint alleges six (6) causes of action against the Defendants: (i) Breach of Express Warranty under New Jersey law, (ii) Breach of Implied Warranty of Merchantability

under New Jersey law, (iii) Deceptive Acts or Practices under New York General Business Law ("NY GBL") § 349, (iv) Violation of the New Jersey Consumer Fraud Act ("NJ CFA"), (v) Negligent Misrepresentation under New York and New Jersey law, and (vi) Fraud under New York and New Jersey law. Each of the causes of action is asserted, without distinction, against Mr. Aris and Themis individually on a theory of direct liability for their personal actions, and against all Defendants through veil-piercing or alter ego theories. *Id.* at ¶¶ 88, 89, 96, 97, 108, 109, 117, 118, 125, 126, 135, 136.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). While a court must accept as true all of the factual allegations in the complaint, this "tenet . . . is inapplicable to legal conclusions." *Iqbal*, 129 S. Ct. at 1949.[6]

[6] In assessing whether to dismiss a complaint, courts are entitled to consider not only the complaint, but also "other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007). A court may likewise consider documents that are "integral to the complaint," *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991), including documents relied upon in bringing suit, *e.g., Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130–31 (2d Cir. 2001).

**ARGUMENT**

**I. The Law of the Case Doctrine Precludes the Prosecution of the Second Complaint.**

"Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). When a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case. *Id.* The purpose of this doctrine is to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit. *Id.* Furthermore, the doctrine may apply even where the prior determination was not embodied in a formal order. *See Messinger v. Messinger*, 16 A.D.3d 562, 562–63, 792 N.Y.S.2d 162 (2d Dep't 2005).

The Second Circuit has "repeatedly stated [that it] will not depart from the law of the case absent cogent or compelling reasons." *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 8 (2d Cir. 1996) (internal quotation omitted). "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (internal quotation omitted).

Here, the law of the case doctrine prevents the Plaintiffs from prosecuting the action at this time. This Court, on two separate occasions, denied Plaintiffs' application to commence a lawsuit against the Defendants, finding that the claims are derivative of the class's claims against KFI and holding that the Plaintiffs could proceed against the Defendants *only if and after* they prevail against KFI and actually obtain a judgment. First, in the November 4, 2013 Order the Court denied Plaintiffs' application for leave to amend the complaint in the KFI Action to add the Defendants because the Plaintiffs' alter-ego action was premature. *See* Jureller Decl., Ex. B

(Nov. 4, 2013 Order) at 2 ("*At the same time, if plaintiffs do prevail in the instant lawsuit and obtain a judgment*, they may well be able to seek collection of it against any 'alter egos' they can prove *at the time*, whether by motion and hearing or by filing a *separate complaint*.") (emphasis added). Second, in the April 18, 2014 Order the Court dismissed the First Complaint and closed the case, and advised the parties that the First Complaint was being dismissed "without prejudice to being re-filed if otherwise appropriate upon *resolution of the related case* [the KFI Action]". *See* Jureller Decl., Ex. C (Apr. 18, 2014 Order).

On each occasion, the Court correctly applied established New York law. The place of incorporation determines which state law will govern the veil-piercing analysis. *See Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 430 (S.D.N.Y. 2010). KFI is incorporated under the laws of New York. New York law is clear: "New York does not recognize a separate cause of action to pierce the corporate veil." *Hart v. Jassem*, 43 A.D.3d 997, 998, 843 N.Y.S.2d. 121 (2d Dep't 2007) (*quoting Fiber Consultants, Inc. v. Fiber Optek Interconnect Corp.*, 15 A.D.3d 528, 529, 792 N.Y.S.2d 89 (2d Dept't 2005)). Rather, it is an equitable remedy that first assumes that the corporation itself is liable for the obligation and, in light of an assertion of facts and circumstances that persuade the court, imposes the corporation's obligations on its "owners." *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141, 623 N.E.2d 1157, 603 N.Y.S.2d 807 (1993). The concept is no more than "an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners." *Id.* This theory, furthermore, assumes the existence of an "obligation" – a judgment – before the veil will be pierced. *See Rotella v. Derner*, 283 A.D.2d 1026, 1026–27, 723 N.Y.S.2d 801 (4th Dep't 2001). Deferring Plaintiffs' assertion of a veil-piercing theory until a time when, if ever, they obtain a

judgment is the correct course of action given the "attendant facts and equities" of this case. *Id.* As such, Plaintiffs' prematurely asserted veil-piercing theory is without merit.

The law of the case, namely the April 18, 2014 Order and affiliated November 4, 2013 Order, unequivocally bars the claims asserted in the Second Complaint until such time that Plaintiffs obtain, if any, a judgment against KFI.

By its June 10, 2014 Order, this Court acknowledged that these claims are derivative of claims against KFI, but that the circumstances had changed, presumably due to the bankruptcy filing by KFI.[7] However, KFI's bankruptcy filing does not change the reasoning behind this Court's prior holdings, or the requirements under New York law – especially now that Plaintiffs, purportedly on behalf of the class, filed the Class Claim in the KFI Bankruptcy Case, asserting a claim in the sum of $261,640,038.59 (without explanation of the basis for such an amount) and thus consenting to the jurisdiction of the Bankruptcy Court to hear and determine the Class Claim against KFI in the first instance. A copy of the Class Claim is attached as **Exhibit "E"** to the Jureller Declaration. As a result, the Bankruptcy Court has jurisdiction to hear and determine the purported Class Claim, and only thereafter, if applicable, can Plaintiffs proceed with any appropriate claims against these Defendants. Furthermore, by its July 16, 2014 order, the Bankruptcy Court has already stated that any veil piercing claims or alter ego claims are subject to the automatic stay (see below herein). KFI has already filed a motion in the Bankruptcy Court for an expedited hearing on its Estimation Motion.[8] As such, although the venue has changed,

---

[7] *See* Fn 3.

[8] The hearing on KFI's motion for an order authorizing estimation of its liability in the KFI Action and establishing a schedule for an estimation proceeding with the Bankruptcy Court (the "Estimation Motion") was held in the Bankruptcy Court on July 16, 2014, and the Bankruptcy Court found that "[b]ecause the Class Action Plaintiffs have not yet filed a proof of claim in this case, nor has the representative sought permission to file a class action claim, this motion is premature. The Court shall carry this motion to another date to be determined." *See* Supplemental Findings, p. 13, a copy of which is annexed as **Exhibit "F"** to the Jureller Declaration. The Class Claim has now been filed by Plaintiffs, and the Estimation Motion is currently scheduled for a hearing in the Bankruptcy Court on September 15, 2014.

the reasoning behind this Court's prior decisions, namely the applicability of New York's veil piercing requirements, has not changed as a result of the KFI bankruptcy filing.

## II. The Bankruptcy Court Has Already Decided that the Alter Ego and Veil-Piercing Claims Are Stayed.

In its bankruptcy case, KFI moved for a determination that the automatic stay applied to the Second Complaint, or alternatively, to extend the automatic stay to the Second Complaint. At the July 16, 2014 hearing, the Bankruptcy Court denied the motion to extend the automatic stay as to any valid "direct claims" asserted against the Defendants in their individual capacity. *See* Jureller Decl., Ex. F (Supplemental Findings) at 12–13. However, with respect to the alter ego and veil-piercing claims, the Bankruptcy Court reasoned that its prior decision in the *In re Pitts* case precluded the prosecution of any alter ego and veil-piercing claims in the Second Complaint. *See id.* at 13 ("To the extent [Plaintiffs] claims rely on piercing the corporate veil of the Debtor, the Class Action Plaintiffs are aware of the consequences as they have appear to have read, and have cited to this Court's *In re Pitts* decision in their brief."); *In re Pitts*, Adv. No. 809-8230 (REG), 2009 WL 4807615, at *1 (Bankr. E.D.N.Y. Dec. 8, 2009) (reasoning that if the "[d]ebtor's liability is derivative of the non-debtor defendants' actions then the post-petition proceedings in the state court may be deemed a violation of the automatic stay, and the judgment obtained in the state court action against the non-debtor defendants would then be void and of no force and effect."); *see also In re Adler*, 494 B.R. 43, 58 (Bankr. E.D.N.Y. 2013) (discussing that the automatic stay is violated by a post-petition proceeding if "(1) one or more non-debtor corporations have been found liable for a prepetition debt on a cause of action asserted in a post-petition proceeding, and (2) the veil between these corporate alter egos and the non-party debtor has been pierced."). As a result, each of claims asserted against the Defendants under these veil piercing and alter ego theories is subject to the automatic stay under 11 U.S.C. § 362(a).

While Plaintiffs have also asserted so called "direct claims" against Themis and Mr. Aris these are no more than disguised veil piercing or alter ego claims, and thus are also subject to the automatic stay. The Second Complaint asserts that Themis and Mr. Aris are directly liable under each of the causes of action. However, there are no facts alleged in the Second Complaint of any actions taken by Themis or Mr. Aris at all, [redacted] As the Court has already acknowledged, these are derivative of claims against KFI. Therefore, it is respectfully submitted that these purported "direct claims" are nothing more than veil piercing claims and subject to the automatic stay.

## III. All "Direct Claims" Against Themis And Mr. Aris Individually Must Be Dismissed.

Assuming, *arguendo*, that the Court finds that the "direct claims" are not derivative of the claims against KFI, the Second Complaint must still be dismissed for failure to state a cause of action.

### A. The Breach of Express Warranty and Implied Warranty of Merchantability Claims Against Themis and Mr. Aris Must be Dismissed.

(a) *Plaintiffs cannot maintain breach of express warranty claims against Themis and Mr. Aris where they did not make any express warranty.*

Under New Jersey law, to plead a claim for breach of express warranty, Plaintiffs must allege "(1) that *Defendant* made an affirmation, promise or description about the product; (2) that this affirmation, promise or description became part of the basis of the bargain for the product; and (3) that the product ultimately did not conform to the affirmation, promise or description." *Snyder v. Farnam Cos., Inc.*, 792 F. Supp. 2d 712, 721 (D. N.J. 2011) (emphasis added) *citing New Hope Pipe Liners LLC v. Composites One, LLC*, CIV. 09-3222, 2009 WL 4282644 (D. N.J. Nov. 30, 2009). Express warranties are governed by Section 2-313 of New Jersey's Uniform Commercial Code, which provides, in pertinent part:

> (1) Express warranties *by the seller* are created as follows:
> (a) Any affirmation of fact or promise made *by the seller* to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

N.J.S.A. § 12A:2–313 (emphasis added).

In this case, Plaintiffs' claims are fatally flawed because Plaintiffs have failed to allege, and cannot truthfully allege on any direct claim, that Themis or Mr. Aris individually made any express warranty whatsoever regarding Capatriti "100% Pure Olive Oil." An express warranty, if any, was made by KFI, as the seller of Capatriti. The Plaintiffs' allegations of an express warranty throughout the Second Complaint are specifically directed towards KFI as the following statements demonstrate: (i) "*[t]he label and packaging of Capatriti* '100% Pure Olive Oil' represents that the product is 'Olive Oil' or '100 Pure' olive oil in at least 9 places"; (ii) "*Gourmet Factory's* [KFI] *misbranding* is intentional"; (iii) "[b]y mislabeling its products, *Gourmet Factory* [KFI] dupes consumers . . ."; (iv) "[t]he *container* . . . represented that it contained '100 Pure' olive oil"; and (v) "V. *Capatriti's False and Misleading Label*." *See* Jureller Decl., Ex. A (Second Complaint) at ¶¶ 5, 6, 7, 9, p. 14 (emphasis added). The Second Complaint does not allege any facts to support claims that Themis or Mr. Aris made any representations to Plaintiffs or any other person.

(b) *Plaintiffs cannot maintain breach of implied warranty of merchantability claims against Themis and Mr. Aris where they were not the seller of the goods and the goods were fit for human consumption.*

"Under New Jersey's U.C.C., *a seller* of goods, absent disclaimer, impliedly warrants that its goods are merchantable to all foreseeable, subsequent buyers." *Paramount Aviation Corp. v. Agusta,* 288 F.3d 67, 73 (3d Cir. 2002) (emphasis added). *See also* N.J.S.A. § 12A:2-314 ("Unless excluded or modified . . . a warranty that the goods shall be merchantable is

implied in every contract for their sale if the *seller* is a merchant with respect to goods of that kind . . . ") (emphasis added).[9] Essentially, the goods at issue must have been defective or not fit for the ordinary purpose for which they were intended. *See Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 705 (D.N.J. 2011).

In particular, Plaintiffs are "require[d to make] a showing regarding the product's functionality, not the advertisements that allegedly induced a customer to purchase it." *In re Gerber Probiotic Sales Practices Litig.*, CIV. 12-835 (JLL), 2014 WL 1310038, at *14 (D. N.J. Mar. 31, 2014) (internal citations omitted) (dismissing breach of implied warranty claims where plaintiffs did not allege that the products were not fit for their ordinary purpose of providing infant nutrition); *see also Lieberson v. Johnson & Johnson Consumer Cos.*, 865 F. Supp. 2d 529, 543 (D. N.J. 2011) (finding no breach of the implied warranty of merchantability where soap and lotion did not help babies sleep, as advertised, because the soap was "clearly manufactured for the purpose of washing and moisturizing babies' skin").

In this case, Plaintiffs' claims are again fatally flawed because Plaintiffs cannot truthfully allege, under a "direct claim", that Themis or Mr. Aris are the "sellers" of Capatriti. Furthermore, Plaintiffs have not alleged that Capatriti was defective or unfit for human consumption; rather, Plaintiffs contend that false and misleading advertisements induced them to purchase Capatriti and the Capatriti "could not pass without objection in the trade under the

[9] Section 2–314 of New Jersey's U.C.C., provides, in pertinent part, that for goods to be merchantable they must at least:

> (a) pass without objection in the trade under the contract description; and
> (b) in the case of fungible goods, are of fair average quality within the description; and
> (c) are fit for the ordinary purposes for which such goods are used; and
> (d) run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and
> (e) are adequately contained, packaged, and labeled as the agreement may require; and
> (f) conform to the promises or affirmations of fact made on the container or label if any.

N.J.S.A. § 12A:2–314.

contract description" and Capatriti was "not of fair average quality within the description." *See* Jureller Decl., Ex. A (Second Complaint) at ¶ 99. Plaintiffs cannot maintain a breach of implied warranty of merchantability claim without a showing that Capatriti was not fit for its general purpose of human consumption. For these reasons, this cause of action must be dismissed.

(c) *The participation theory does not apply.*

Further, Plaintiffs cannot impose personal liability on Themis and Mr. Aris for breach of warranty claims [redacted] "[I]n the absence of a basis for piercing the corporate veil, an officer is not liable for the contractual obligations of a corporation." *Am. Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, CIV. 11-1279 (MLC) 2011 WL 3022243, at *3 (D. N.J. July 22, 2011) (*quoting Home Buyers Warranty v. Roblyn Dev. Corp.*, No. A-0500-05T5, 2006 WL 2190742, at *4 (N.J. App. Div. Aug. 4, 2006)). "[L]iability will be imposed upon a corporate officer only when that officer purposefully agrees to accept personal responsibility for the corporation's contractual performance." *Home Buyers Warranty*, 2006 WL 2190742 at *4. [redacted]

In addition, the participation theory of personal liability for the tortious conduct of corporate officers does not apply where the cause of action sounds in contract, rather than tort principles. *See Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 309 (2002).[10]

---

[10] In *Saltiel*, plaintiffs brought an action against a turfgrass corporation, GSI Consultants, Inc. and its officers, Henry Indyk and Richard Caton, alleging they negligently prepared and designed turf specifications for an athletic field, and alleging that the officers were personally liable under the participation theory. The court discussed the scope of the parties' obligations as follows:

> [T]he scope of the parties' obligations was defined by the contract, and the contract imposed responsibilities on defendant GSI only, and not on defendants Indyk and Caton. The expectation was that defendant corporation would design and prepare the requisite specifications for the athletic fields and that plaintiff would compensate the corporation for the work. There appears to have been no expectation that the individual defendants would be personally liable under the contract. Plaintiff's original request for a proposal was directed toward defendant GSI, and the

**B. The Claims for Violation of NY GBL § 349 and NJ CFA Against Themis and Mr. Aris Must be Dismissed.**

(a) *Plaintiffs cannot maintain claims for violation of NY GBL § 349 against Themis and Mr. Aris where they made no misrepresentations.*

New York General Business Law Section 349 provides that deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are unlawful. *See* NY GBL § 349. To prevail on a claim for violation of NY GBL § 349, Plaintiffs must allege "first, that the challenged act or practice was consumer-oriented; second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act." *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29, 731 N.E.2d 608, 709 N.Y.S.2d 892 (2000). Essentially, the Plaintiffs must prove that "*the defendant* made misrepresentations or omissions . . ." *Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 77 (S.D.N.Y. 2006) (emphasis added).

As previously discussed, Plaintiffs' claims fail because Plaintiffs have not alleged and cannot truthfully allege that Themis or Mr. Aris made any misrepresentation or omission regarding Capatriti "100% Pure Olive Oil." A misrepresentation or omission, if any, was made by KFI, as the seller of Capatriti. As such, any "direct claims" against Themis and Mr. Aris must be dismissed.

(b) *Plaintiffs cannot maintain claims for violation of the NJ CFA against Themis and Mr. Aris where they made no misrepresentations.*

Similar to NY GBL § 349, the NJ CFA provides that the "act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false

---

> responses received by plaintiff were on letterhead that specifically included the corporate names "Turfcon" and "GSI, Inc." Clearly, plaintiff was aware throughout the transaction that she was dealing with a corporate entity and that defendants Indyk and Caton were acting on GSI's behalf.

*Id.* at 280. The court went on to state that a tort remedy does not arise from a contractual relationship unless the breaching party owes an independent duty imposed by law. *Id.* Moreover, while the plaintiffs' allegations in *Saltiel* sounded in tort, the court found the case to essentially involve a breach of contract claim. *Id.* at 281.

promise, misrepresentation . . . is declared to be an unlawful practice." N.J.S.A. § 56:8–2. While the phrase "unconscionable commercial conduct" is not defined in the CFA, courts acknowledge that "unconscionability" is an "amorphous concept obviously designed to establish a broad business ethic" and have defined the term as "[t]he standard of conduct contemplate[ing] good faith, honesty in fact and observance of fair dealing." *Meshinsky v. Nichol Yacht Sales, Inc.*, 110 N.J. 464, 472 (1998) (internal citation omitted). Individual liability under the CFA can only apply to a person who violates the CFA by means of an affirmative misrepresentation or knowing omission, and that individual can only be liable for his own affirmative acts or knowing omissions. *See Allen v. V & A Bros., Inc.*, 208 N.J. 114, 131–32 (2011). Such an individual cannot be held liable under the CFA "merely because of the act of the corporate entity." *Id.* at 132. As set forth by the Supreme Court of New Jersey, "individual liability for a violation of the CFA will necessarily depend upon an evaluation of both the specific source of the claimed violation that forms the basis for the plaintiff's complaint as well as the particular acts that the individual has undertaken." *Id.* at 136.

Plaintiffs have failed to allege and cannot truthfully allege that Themis or Mr. Aris made any misrepresentation or omission regarding Capatriti "100% Pure Olive Oil." A misrepresentation or omission, if any, was made by KFI, as the seller of Capatriti, and any claims against Themis or Mr. Aris would be derivative of such claims. As such, any "direct claims" must be dismissed.

**C. The Negligent Misrepresentation and Fraud Claims Against Themis and Mr. Aris Must be Dismissed.**

(a) *Plaintiffs cannot maintain negligent misrepresentation claims against Themis and Mr. Aris where (i) there was no special relationship under New York law; and (ii) there was no independent duty under New Jersey law requiring disclosure.*

Plaintiffs assert a claim for negligent misrepresentation under New York and New Jersey law. In New York, the plaintiff must show (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment. *See Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000). To determine whether a special relationship existed courts consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *See Suez Equity Inv., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) (*citing Kimmell v. Schaefer*, 89 N.Y.2d 257 (N.Y. 1996)).

The New York Court of Appeals explained that "[i]n the commercial context, a duty to speak with care exists when the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information." *Kimmell v. Schaefer,* 89 N.Y.2d 257, 263 (1996) (quotation marks and citation omitted). In general, though, a simple commercial relationship, such as that between a buyer and seller, or franchisor and franchisee, does not constitute the kind of "special relationship" necessary to support a negligent misrepresentation claim. *See Dimon, Inc. v. Folium, Inc.,* 48 F. Supp. 2d 359, 373 (S.D.N.Y. 1999) ("[A]n arm's length business relationship is not enough.") (citation omitted).

Under New Jersey law, "[t]o prevail on a negligent misrepresentation claim, a plaintiff must prove that the defendant negligently made an incorrect statement, upon which the plaintiff justifiably relied." *Alexander v. CIGNA Corp.*, 991 F. Supp. 427, 440 (D. N.J. 1998) (*citing H. Rosenblum, Inc. v. Adler*, 93 N.J. 324, 461 A.2d 138 (1983)). A negligent misrepresentation claim may also be based on an omission. *See Henderson v Volvo Cars of N. Am., LLC*, CIV. 09-4146 (DMC), 2010 WL 2925913 (D.N.J. July 21, 2010). A plaintiff may not bring an omission-based claim "unless the breaching party owes [him or her] an independent duty imposed by law" requiring disclosure. *Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 315 (2002). In New Jersey, such a duty to disclose arises: (1) when there is a fiduciary relationship between the parties; (2) when the transaction is intrinsically fiduciary, and calls for good faith and full disclosure; and (3) and when one party expressly places a special trust or confidence in the other. *Id.*

Plaintiffs' negligent misrepresentation claims fail as a matter of law because (i) Plaintiffs have not sufficiently alleged the existence of a "special relationship" between the Plaintiffs and Themis and Mr. Aris under New York law and (ii) Plaintiffs have not alleged that Themis and Mr. Aris owed Plaintiffs an independent duty to disclose information required by New Jersey law. First, Plaintiffs have not alleged that they have any relationship with the individual Defendants. In fact, Plaintiffs have not alleged and cannot reasonably assert, that they had more than at most a "simple commercial relationship" with KFI itself, *Dimon, Inc.*, 48 F. Supp. 2d at 373. Also, they have not alleged and cannot reasonably assert that their purchases, which were from third party retailers, were "intrinsically fiduciary" or the result of a "special trust or confidence" in the individual Defendants, with whom they had no privity, *Saltiel*, 170 N.J. at 297.

(b) *Plaintiffs failed to plead the negligent misrepresentation and fraud claims against Themis and Mr. Aris with particularity.*

Fraud claims asserted under New York and New Jersey law, as well as claims for negligent misrepresentation under New York law, are subject to Rule 9(b)'s heightened pleading standard. *See, e.g., Frederico v. Home Depot*, 507 F.3d 188, 200 (3rd Cir. 2007); *Naughright v. Weiss*, 826 F. Supp. 2d 676, 688 (S.D.N.Y. 2011). Rule 9 provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). To comply with Rule 9(b), a plaintiff must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004) (citations omitted); *see also Frederico*, 507 F.3d at 200. Where "fraud is alleged against multiple defendants, the acts complained of by each defendant should be separately set forth in the [c]omplaint." *Lasky v. Shearson Lehman Bros. Inc.*, 139 F.R.D. 597, 598 (S.D.N.Y. 1991) (citing *Zerman v. Ball*, 735 F.2d 15, 22 (2d Cir. 1984)).

To satisfy the particularity requirements of Rule 9(b), "plaintiffs [also] must allege facts that give rise to a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995). The requisite "strong inference of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Id.* at 52. Claims of fraud cannot be based on "speculation and conclusory allegations." *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004).

With respect to direct claims against Mr. Aris individually, the Second Complaint fails to meet the heightened standard under Rule 9(b). [redacted]

[redacted] Plainly stated, these allegations are nowhere close to meeting the heightened pleading standards required for these claims.

Similarly, the direct claims against Themis for negligent misrepresentation and fraud also clearly fail to meet the heightened pleading standard under Rule 9(b). [redacted]

[redacted]

[redacted] There are no facts pled alleging any false statements by Themis as a result thereof.

[redacted]

As such, even taking these scattered allegations as true, the Second Complaint does not meet the heightened pleading standards required under Rule 9(b) as to the "direct claims" against Themis for negligent misrepresentation and fraud.

Further, the Second Complaint is devoid of any allegation of scienter or fraudulent intent as against Themis or Mr. Aris. Plaintiffs do not allege a violation of any mandatory labeling requirements, and this Court has already acknowledged the lack of mandatory labeling requirements when it stated that "many states, federal, and industry labeling standards, though not binding, distinguish between olive oil and pomace." KFI Action Docket Entry 97, Memorandum Order at 2. No facts have been pled which sufficiently allege that Themis and Mr. Aris individually, consciously or recklessly mislabeled Capatriti.

(c) *The commission of the tort doctrine and tort participation theory do not apply.*

Plaintiffs cannot maintain direct liability actions against Themis and Mr. Aris where they did not personally participate in the alleged wrongful act. In tort actions asserted under New York law, corporate officers and directors must have participated in or had knowledge of the tort to be held individually liable. *See Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 558, 873

N.Y.S.2d 17, 21 (1st Dep't 2009). As discussed in *Peguero*, the '"commission of a tort doctrine' permits personal liability to be imposed on a corporate officer for misfeasance or malfeasance, i.e., an affirmative tortious act; personal liability cannot be imposed on a corporate officer for nonfeasance, i.e., a failure to act." *Id.* (citations and quotations omitted). "Where there is no evidence of independently tortious conduct on the part of individual defendants, and nothing in the record raises a triable dispute that they acted at all times within the scope of their employment, those individuals are entitled to summary dismissal of the action." *Mendez v. City of New York*, 259 A.D.2d 441, 442, 687 N.Y.S.2d 346, 347 (1st Dep't 1999).

Similarly, under New Jersey law, corporate officers and directors must have been sufficiently involved in the commission of the tort to be held personally liable. *See Saltiel v. GSI Consultants, Inc.*, 170 N.J. 297, 303, 788 A.2d 268 (2002).

Nowhere in the Second Complaint is it alleged that Themis or Mr. Aris personally communicated or had any direct dealings with Plaintiffs in any capacity, much less in their individual capacities. Further, there are no sufficient facts pled which show that Mr. Aris or Themis personally participated in any wrongful act.

**IV. By Filing the Class Claim, Plaintiffs have Consented to the Jurisdiction of the Bankruptcy Court to Hear and Determine the Class Claim Against KFI in the First Instance.**

Plaintiffs, by filing the Class Claim, subjected themselves to the Bankruptcy Court's equitable jurisdiction. *See, e.g., In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995) (holding that bankruptcy court had core jurisdiction over creditor's proof of claim relating to pre-petition contract where the claim arose under state law)*; Pan Am. World Airways, Inc. v. Evergreen Int'l Airlines, Inc.*, 132 B.R. 4, 7 (S.D.N.Y.1991) ("When a creditor files a proof of claim it submits itself to the bankruptcy court's equitable power, and the claims, even though

arising under state law, become core proceedings within the jurisdiction of the bankruptcy court."). As the Second Circuit found,

> A claim against the estate is instituted by filing a proof of claim as provided by the bankruptcy rules. The filing of the proof invokes the special rules of bankruptcy concerning objections to the claim, estimation of the claim for allowance purposes, and the rights of the claimant to vote on the proposed distribution. *Understood in this sense, a claim filed against the estate is a core proceeding because it could arise only in the context of bankruptcy.* Of course, the state-law right underlying the claim could be enforced in a state court proceeding absent the bankruptcy, but the nature of the state proceeding would be different from the nature of the proceeding following the filing of a proof of claim.

*In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389–90 (2d Cir. 1990) (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir.1987)) (emphasis in original). As such, the proper forum for hearing and deciding the Class Claim is the Bankruptcy Court, where Plaintiffs have now consented to jurisdiction, otherwise the result is that the same claims, based upon the same facts, will be simultaneously litigated in two separate forums, causing the likely possibility of different results.

## CONCLUSION

For all the foregoing reasons, the Defendants respectfully request that this Court grant its motion and dismiss the Second Complaint in its entirety, with prejudice, together with such other and further relief as this Court may deem just and proper.

Dated: New York, New York
August 12, 2014

**KLESTADT & WINTERS, LLP**

By: *John E. Jureller, Jr.*
Tracy L. Klestadt
John E. Jureller, Jr.
570 Seventh Ave., 17th Floor
New York, New York 10018
Tel: (212) 972-3000
*Attorneys for Defendants*