**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JOSEPH EBIN and YERUCHUM JENKINS, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KANGADIS FAMILY MANAGEMENT LLC, ARISTIDIS KANGADIS a/k/a "MR. ARIS," ANDROMAHI KANGADIS a/k/a "MRS. MAHI," and THEMIS KANGADIS,

Defendants.

Civil Action 14-cv-1324 (JSR)

# PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: August 26, 2014

**BURSOR & FISHER, P.A.**

Scott A. Bursor
Joseph I. Marchese
Neal J. Deckant
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com
ndeckant@bursor.com
ykopel@bursor.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

Page(s)

I. INTRODUCTION ... 1

II. THE INSIDERS' "LAW OF THE CASE" ARGUMENT IS WRONG ... 2

III. THE INSIDERS' STATEMENT THAT THE BANKRUPTCY COURT STAYED THE VEIL-PIERCING CLAIMS IS FALSE; THE BANKRUPTCY COURT DENIED KFI'S MOTION TO STAY THIS ACTION ... 5

IV. THE COMPLAINT ADEQUATELY STATES CLAIMS FOR DIRECT LIABILITY AGAINST THEMIS AND ARISTIDIS KANGADIS ... 6

A. Breach Of Express And Implied Warranties (Counts I & II) ... 7

B. Violation Of GBL § 349 (Count III) ... 9

C. Violation Of The NJCFA (Count IV) ... 10

D. Negligent Misrepresentation & Common Law Fraud (Counts V & VI) ... 12

V. THE CLASS PROOF OF CLAIM IN THE KFI BANKRUPTCY IS NOT RELEVANT TO THIS MOTION ... 16

CONCLUSION ... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. V and A Bros., Inc.*,
26 A.3d 430 (N.J. 2011) ........ 11

*American Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*,
2011 WL 3022243 (D.N.J. July 22, 2011) ........ 9

*Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC*,
402 Fed. Appx. 623 (2d Cir. 2010)........ 3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) ........ 14

*Bd. of Managers of Marke Gardens Condo. v. 240/242 Franklin Ave. LLC*,
2008 WL 4058677 (N.Y. Sup. Ct. 2008)........ 10

*Ebin v. Kangadis Food, Inc. d/b/a The Gourmet Factory*,
13 Civ. 2311 (JSR) ........ passim

*FlagHouse, Inc. v. ProSource Dev., Inc.*,
528 Fed. Appx. 186 (3d Cir. 2013)........ 8

*Gennari v. Weichert Co. Realtors*,
691 A.2d 350 (N.J. 1997) ........ 11

*Hart v. Jassem*,
43 A.D.3d 997 (N.Y. App. Div. 2007) ........ 4

*Hyland v. Aquarian Age 2,000, Inc.*,
372 A.2d 370 (N.J. Sup. Ct. Ch. Div. 1977)........ 11

*In re JMK Construction Group, Ltd.*,
502 B.R. 396 (Bankr. S.D.N.Y. 2013)........ 5

*In re Kangadis Food, Inc.*,
Case No. 8-14-72649 (Bankr. E.D.N.Y.) ........ 5

*In re September 11 Litig.*,
2003 WL 22251325 (S.D.N.Y. Oct. 1, 2003)........ 2

*Kugler v. Koscot Interplanetary, Inc.*,
293 A.2d 682 (N.J. Sup. Ct. Ch. Div. 1972)........ 11

*Levesque v. Kelly Commc'ns., Inc.*,
1997 WL 284984 (S.D.N.Y. May 29, 1997) ........ 4

*LNC Invs., Inc. v. First Fid. Bank, N.A.*,
173 F.3d 454 (2d Cir. 1999) .......... 2

*Marine Midland Bank, N.A. v. Miller*,
664 F.2d 899 (2d Cir. 1981) .......... 13

*Morris v. N.Y. State Dep't of Taxation and Fin.*,
82 N.Y.2d 135 (1993).......... 4

*NAOOA v. Kangadis Food, Inc.*,
13 Civ. 868 (JSR) .......... 14

*New Mea Constr. Corp. v. Harper*,
497 A.2d 534 (N.J. Sup. Ct. App. Div. 1985) .......... 11

*North Am. Olive Oil Ass'n v. Kangadis Food Inc., d/b/a The Gourmet Factory*,
No. 13-cv-0868 (S.D.N.Y. Apr. 25, 2013) .......... 14

*Peguero v. 601 Realty Corp.*,
58 A.D.3d 556 (N.Y. App. Div. 2009) .......... 16

*People by Abrams v. 21st Century Leisure Spa Intern. Ltd.*,
583 N.Y.S.2d 726 (N.Y. Sup. Ct. 1991).......... 10

*Pludeman v. N. Leasing Sys., Inc.*,
890 N.E.2d 184 (N.Y. 2008) .......... 13

*Rotella v. Derner*,
283 A.D.2d 1026 (N.Y. App. Div. 2001) .......... 4

*St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*,
884 F.2d 688 (2d Cir. 1989). .......... 5

*Suprema Specialties, Inc. Sec. Litig.*,
438 F.3d 256 (3d Cir. 2006) .......... 15

*U.S. ex rel. Polansky v. Pfizer, Inc.*,
2009 WL 1456582 (E.D.N.Y. May 22, 2009).......... 15

*U.S. v. Huron Consulting Grp., Inc.*,
2011 WL 2017322 (S.D.N.Y. May 16, 2011) .......... 2

*Variable Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*,
945 F. Supp. 603 (S.D.N.Y. 1996) .......... 3

*Yoder v. Orthomolecular Nutrition Inst., Inc.*,
751 F.2d 555 (2d Cir. 1985) .......... 14

**Statutes**

11 U.S.C. § 105........................................................................................................................ 5

GBL § 349.......................................................................................................................... passim

N.J.S.A. § 12A:2-314................................................................................................................ 9

N.J.S.A. §§ 56:8-1.................................................................................................................. 10

## I. INTRODUCTION

The Complaint in this action asserts the same six counts that are pending in the original action, *Ebin v. Kangadis Food, Inc. d/b/a The Gourmet Factory*, 13 Civ. 2311 (JSR) ("*Ebin I*"). That case, *Ebin I*, was stayed by KFI's bankruptcy filing. This action asserts the same six counts against Kangadis Family Management LLC ("KFM"), Aristidis Kangadis, a/k/a "Mr. Aris," Andromahi Kangadis, a/k/a "Mrs. Mahi," and Themis Kangadis (collectively, "Defendants" or the "Insiders").

The claims against two of these Insiders, Aristidis and Themis Kangadis, are asserted on a theory of direct liability for their own tortious conduct. [redacted]

The claims against all of the Insiders are also asserted on a veil-piercing / alter-ego theory, based on allegations that [redacted]

The Insiders have moved to dismiss the Complaint. But this Court already held that the *Ebin I* complaint, which contained only a subset of the allegations in the Complaint here, was

sufficient to state each of the same six causes of action against KFI. The allegations here are more than sufficient to state these same claims against each of the Insiders on a veil-piercing / alter-ego theory, and additionally with respect to Aristidis and Themis Kangadis, on a theory of direct liability. The Insiders' arguments for dismissal of this action are entirely wrong. There are no grounds for dismissal of any of the claims.

## II. THE INSIDERS' "LAW OF THE CASE" ARGUMENT IS WRONG

The Insiders argue that the law of the case doctrine bars the Court's June 10, 2014 Order granting Plaintiffs permission to file this action because the Court previously denied Plaintiffs' motion for leave to amend without prejudice in *Ebin I*. Defs.' Br. at 9. That is wrong. "[T]he law of the case doctrine is, at best, a discretionary doctrine, which does not constitute a limitation on the court's power but merely expresses a general reluctance, absent good cause, to reopen rulings that the parties have relied upon." *LNC Invs., Inc. v. First Fid. Bank, N.A.*, 173 F.3d 454, 467 n.12 (2d Cir. 1999) (citation and internal quotation marks omitted). "In federal courts, the district judge may re-visit earlier decisions and reconsider their wisdom in light of factual and procedural developments in pre-trial and trial proceedings." *U.S. v. Huron Consulting Grp., Inc.*, 2011 WL 2017322, at *2 n.2 (S.D.N.Y. May 16, 2011), *citing In re September 11 Litig.*, 2003 WL 22251325, at *1 (S.D.N.Y. Oct. 1, 2003). Here, the Court "modified its position based on changed circumstances, as every court from time immemorial is able to do." 6/30/14 Hearing Tr. at 7:12-14 (Dkt. 23).

The Insiders also argue this action cannot go forward unless and until a judgment is obtained against KFI (an event that is unlikely ever to occur given KFI's bankruptcy filing). That is wrong. The Court already rejected that argument at the June 30, 2014 status conference, and defense counsel agreed that it was wrong:

Mr. Jureller: … [I]f the class does not file a proof of claim, what they've effectively done in the bankruptcy case is waived all claims against the company itself. That will have an effect, your Honor, or it could have an effect on our case ….

The Court: Although I'm not sure that would be so, I don't see why it would affect our case because the theory of the family case is an alter ego theory, and that would continue even if, for example, tomorrow the company were to go out of business entirely, forget about the bankruptcy, just cease to exist. It doesn't mean that the persons allegedly responsible for the alleged wrong acts wouldn't still be liable.

Mr. Jureller: **I agree completely with you, your Honor** ….

*Id.* at 5:13-6:3 (emphasis added).

The Insiders' suggestion that obtaining a judgment against a corporation is a prerequisite for asserting veil-piercing claims is clearly wrong. Under New York law, a corporation's principals are "jointly and severally liable" in a successful veil piercing action. *See Atateks Foreign Trade, Ltd. v. Private Label Sourcing, LLC*, 402 Fed. Appx. 623, 627 (2d Cir. 2010). Here, KFI and the Insiders are alleged to be joint tortfeasors, and each of them can be held independently liable for the wrongs committed.

In *Variable Parameter Fixture Dev. Corp. v. Morpheus Lights, Inc.*, 945 F. Supp. 603 (S.D.N.Y. 1996), the plaintiff sued a corporation and its sole shareholder, alleging that the shareholder was liable for the corporation's acts based on alter ego allegations. *Id.* at 605. After the corporation filed for Chapter 11 bankruptcy, and the case was stayed against it, the shareholder argued that the corporation was an "indispensable party to th[e] litigation" and that the alter-ego claims could not proceed against him in the corporation's absence. *Id.* at 609. Judge Chin rejected that argument, noting that "a judgment obtained against a corporation and its alter ego is enforceable against both separately and leads to joint and several liability." *Id.*

Judge Chin therefore reasoned that if the plaintiff "were to succeed on its alter ego claims," both the corporation and its shareholder "would be joint tortfeasors" and the shareholder "would be 'independently' liable" to the plaintiff. *Id.* The plaintiff was accordingly allowed to prosecute its alter ego claims despite the corporate defendant's absence. *Id.*; *see also Levesque v. Kelly Commc'ns., Inc.*, 1997 WL 284984, at *1 (S.D.N.Y. May 29, 1997) (denying summary judgment on claim to "pierce the corporate veil" against individual defendant after "[t]he corporate defendants filed for bankruptcy" and the case was stayed against them).

The Insiders fail to cite any authority requiring a judgment against a corporation as a prerequisite to the prosecution of alter ego or veil piercing claims. And Plaintiffs are unaware of any court that has ever imposed such a requirement.[1]

The Insiders argue that "New York does not recognize a separate cause of action to pierce the corporate veil." Defs.' Br. at 10. That is irrelevant, since the Complaint does not plead a separate cause of action to pierce the veil. [redacted]

[1] None of the cases cited by Defendants even address this issue. In *Hart v. Jassem*, 43 A.D.3d 997, 998 (N.Y. App. Div. 2007) the court found that there was no "separate cause of action to pierce the corporate veil" but that the complaint adequately pled allegations sufficient to pierce the corporate veil as to its remaining causes of action. In *Rotella v. Derner*, 283 A.D.2d 1026, 1026-27 (N.Y. App. Div. 2001) the court held that the plaintiffs alleged significant evidence to pierce the corporate veil in action against alter ego defendants. Finally, in *Morris v. N.Y. State Dep't of Taxation and Fin.*, 82 N.Y.2d 135, 141 (1993) the court found that the underlying claims on which the plaintiffs sought to pierce the veil lacked merit entirely. Here, however, the underlying claims on which Plaintiffs seek to impose alter ego liability are sufficiently alleged, as the Court recognized in its orders denying KFI's motion to dismiss and summary judgment motion in *Ebin I*.

## III. THE INSIDERS' STATEMENT THAT THE BANKRUPTCY COURT STAYED THE VEIL-PIERCING CLAIMS IS FALSE; THE BANKRUPTCY COURT DENIED KFI'S MOTION TO STAY THIS ACTION

The Insiders argue the bankruptcy court "has already decided that the alter ego and veil-piercing claims are stayed." Defs.' Br. at 12. That is absolutely false. In fact, the bankruptcy court denied KFI's motion to stay this action, holding that none of the claims in this action are property of the KFI estate, none are subject to the automatic stay, and there are no grounds to extend the stay to this action under 11 U.S.C. § 105. *See In re Kangadis Food, Inc.*, Case No. 8-14-72649 (Bankr. E.D.N.Y.), 7/28/14 Order at 12 ("As for the Debtor's motion regarding alleged violations of the automatic stay, and to extend the stay to the principals, these requests shall be denied. … There is no real basis to extend the stay to cover the Debtor's insiders …. As for the Debtor's assertion that the action proceeding before Judge Rakoff involves claims belonging to the Debtor, the Court disagrees.").

In the Second Circuit, alter ego or veil piercing claims against a debtor's owners or principals are considered property of the estate only if (1) the alter ego claim could have been asserted by the debtor pre-petition, and (2) the claim does not involve a direct injury to a particular creditor. *See St. Paul Fire and Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 704-05 (2d Cir. 1989). Under New York law, a "creditor has standing to bring an alter-ego claim when the harm alleged in support of the claim is personal to them." *In re JMK Constr. Grp., Ltd.*, 502 B.R. 396, 405 (Bankr. S.D.N.Y. 2013) (internal quotation marks omitted). "In assessing whether the action accrues individually to a claimant or generally to the corporation, a court must look to the injury for which relief is sought and consider whether it is peculiar and personal to the claimant or general and common to the corporation and creditors." *Id.* (internal quotation marks omitted). "A claim is general if there is no particularized injury arising from it, and it could be brought by any creditor of the debtor." *Id.* (internal quotation marks omitted). "A claim is

personal to the creditor when a third party has injured not the bankrupt corporation itself but a creditor of that corporation." *Id.* (internal quotation marks omitted).

As this Court already observed, "the common actual injury consisted of the payment of the price of olive oil for a product that was pomace oil and the associated receipt of an inferior product different from that which the consumers purchased." 2/25/14 Mem. Opinion at 16 (*Ebin I* Dkt. 98). The relief sought is the return of the purchase price (in full or in part) to Class members who paid it, and in the case of the New York Subclass, for statutory damages of $50 apiece pursuant to NY GBL § 349(h). *See* Compl. ¶ 114. These claims do not seek relief for any injury to KFI, or for any injury that could be asserted by creditors who are not Class members. Thus the claims are personal to the Class members, are not property of KFI's estate, and are properly proceeding before this Court.

Furthermore, since this Court held that identical allegations were sufficient to survive a motion to dismiss the claims against KFI in *Ebin I*, *see* 12/11/13 Memorandum Order at 8-9 (*Ebin I* Dkt. 73), these same allegations, [redacted] are sufficient to state the same claims against the Insiders on a veil-piercing/alter-ego theory of liability.[2]

## IV. THE COMPLAINT ADEQUATELY STATES CLAIMS FOR DIRECT LIABILITY AGAINST THEMIS AND ARISTIDIS KANGADIS

The Insiders contend Plaintiffs fail to allege sufficient facts to assert any of their six counts for direct liability against Aristidis and Themis Kangadis. *See* Defs.' Br. at 13-24. But this Court previously found the complaint in *Ebin I* sufficiently alleges the same six causes of

[2] Aside from arguing the claims were stayed by the bankruptcy court or barred by the law of the case doctrine, the Insiders' brief makes no substantive argument concerning the sufficiency of the facts pleaded to support the veil-piercing / alter-ego theories of liability. [redacted]

action against KFI, and the additional allegations concerning the personal conduct of Aristidis and Themis Kangadis are more than sufficient to state the same claims against them directly.

**A. Breach Of Express And Implied Warranties (Counts I & II)**

Counts I and II assert claims for breach of express warranty and breach of the implied warranty of merchantability under New Jersey law. The Insiders argue that "Plaintiffs have failed to allege… that Themis or Mr. Aris individually made any express warranty whatsoever," or "that Themis or Mr. Aris are the 'sellers' of Capatriti." Defs.' Br. at 14-15. Defendants are wrong on both points. In fact, Plaintiffs specifically allege that Aristidis and Themis Kangadis "**expressly warranted** that Capatriti '100% Pure Olive Oil' was, in fact, 100% pure olive oil." Compl. ¶¶ 91, 98 (emphasis added). Plaintiffs also allege that both Aristidis and Themis Kangadis are "the designers, manufacturers, marketers, distributors, and/or **sellers**" of Capatriti "100% Pure Olive Oil." *Id.* ¶ 91 (emphasis added). Plaintiffs' Complaint provides detailed factual support for each of these allegations, including [redacted]

[redacted]

[redacted]

These allegations are more than sufficient to state a claim for direct personal liability for breaches of warranty under New Jersey law. Indeed, the Third Circuit has held that it is proper for a plaintiff to bring claims for breach of warranty against both a corporation and its employee in his individual capacity, at least where the complaint alleges that the employee personally engaged in the wrongful conduct. *FlagHouse, Inc. v. ProSource Dev., Inc.*, 528 Fed. Appx. 186, 189 (3d Cir. 2013). The facts alleged here are more than sufficient to meet the *FlagHouse* standard for imposing personal liability.

The Insiders also argue that Plaintiffs failed to state a prima facie case for breach of the implied warranty of merchantability because they "have not alleged that Capatriti was defective or unfit for human consumption." Defs.' Br. at 15. But fitness for human consumption is not the applicable standard. "Section 2-314 of New Jersey's U.C.C. provides, in pertinent part, that for goods to be merchantable they must at least: (a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; (c) are fit for the ordinary purposes for which such goods are used; and …
(f) conform to the promises or affirmations of fact made on the container or label if any." Defs.'

Br. at 15 n.9, *quoting* N.J.S.A. § 12A:2-314. Plaintiffs make these precise allegations. *See* Compl. ¶ 99. Furthermore, this Court has already held that these identical allegations stated a claim for breach of the implied warranty of merchantability in *Ebin I*. *See* 12/11/13 Memorandum Order at 8-9 (*Ebin I* Dkt. 73) ("Here, every relevant labeling standard described above, such as that of the International Olive Council and the U.S. Department of Agriculture, regard products sold in the manner of the defendant's product as mislabeled. Plaintiffs have thus adequately pled that Kangadis's label breaches the implied warranty of merchantability under New Jersey law.").

The Insiders argue that "Plaintiffs cannot impose personal liability on Themis and Mr. Aris for breach of warranty claims solely based on their roles as officers of KFI." Defs.' Br. at 16. [redacted] These allegations are not based "solely" on their roles as officers of KFI. They are based on the fraud Aristidis and Themis Kangadis actively committed.[3]

**B. Violation Of GBL § 349 (Count III)**

Count III asserts claims for violation of New York GBL § 349. The Insiders argue that "Plaintiffs' claims fail because Plaintiffs have not alleged and cannot truthfully allege that

[3] With respect to the breach of warranty claims, the Insiders rely on *American Rubber & Metal Hose Co., Inc. v. Strahman Valves, Inc.*, 2011 WL 3022243 (D.N.J. July 22, 2011), for the proposition that "in the absence of a basis for piercing the corporate veil, an officer is not liable for the contractual obligations of a corporation." *See* Defs.' Br. at 16. But *American Rubber* is easily distinguished. The claims against Aristidis and Themis Kangadis are based on [redacted] Furthermore, unlike *American Rubber*, here there <u>is</u> a basis for piercing the corporate veil. *S*[redacted]

Themis or Mr. Aris made any misrepresentation or omission regarding Capatriti '100% Pure Olive Oil,'" and that "[a] misrepresentation or omission, if any, was made by KFI, as the seller of Capatriti." Defs.' Br. at 17. That is wrong for the same reasons as discussed in Part IV.A, above. [redacted]

New York courts regularly permit claims for violation of GBL § 349 to proceed against <u>both</u> a corporation and an employee in his individual capacity. *See, e.g., Bd. of Managers of Marke Gardens Condo. v. 240/242 Franklin Ave. LLC*, 2008 WL 4058677, at *6 (N.Y. Sup. Ct. 2008) (denying a motion to dismiss a claim for violation of GBL § 349 against an individual defendant, who was the sole member of a separate LLC defendant that sponsored the condominium development plan at issue); *see also People by Abrams v. 21st Century Leisure Spa Intern. Ltd.*, 583 N.Y.S.2d 726, 730 (N.Y. Sup. Ct. 1991) (granting petition for a judgment in a government enforcement action for violation of GBL § 349 against an individual defendant, who was the president of a separate corporate defendant). Here, the facts alleged in Plaintiffs' Complaint are more than sufficient to state a claim for direct personal liability for violation of GBL § 349.

**C. Violation Of The NJCFA (Count IV)**

Count IV asserts claims for violation of the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8-1, *et seq*. Again, the Insiders contend that "Plaintiffs have failed to allege and cannot truthfully allege that Themis or Mr. Aris made any misrepresentation or omission regarding Capatriti '100% Pure Olive Oil,'" and that "[a] misrepresentation or omission, if any, was made by KFI, as the seller of Capatriti, and any claims against Themis or Mr. Aris would be derivative of such claims." Defs.' Br. at 17. Those arguments are wrong for the same reasons as those set

forth above in Parts IV.A and IV.B.

The Supreme Court of New Jersey has repeatedly permitted claims for violation of the NJCFA to proceed against both a corporation and an employee in his individual capacity. *See, e.g.*, *Allen v. V and A Bros.*, *Inc.*, 26 A.3d 430, 440-41 (N.J. 2011) (reversing the dismissal of claims at summary judgment for violation of the NJCFA against individual defendants, who were the principals of a separate corporate defendant, finding that "it is clear that an individual who commits an affirmative act or a knowing omission that the CFA has made actionable can be liable individually," and that "[a]lthough the statute would also impose liability on the individual's corporate employer for such an affirmative act, there is no basis on which to conclude that the statute meant to limit recourse to the corporation"); *see also id.* at 441 ("Our Appellate Division and our trial courts have likewise recognized that individuals may be independently liable for violations of the CFA, notwithstanding the fact that they were acting through a corporation at the time."), *citing New Mea Constr. Corp. v. Harper*, 497 A.2d 534 (N.J. Sup. Ct. App. Div. 1985) (remanding for consideration of individual liability of corporation's principal); *Hyland v. Aquarian Age 2,000, Inc.*, 372 A.2d 370 (N.J. Sup. Ct. Ch. Div. 1977) (deferring determination of personal liability of corporation's founder pending further proceedings); *Kugler v. Koscot Interplanetary, Inc.*, 293 A.2d 682 (N.J. Sup. Ct. Ch. Div. 1972) (imposing personal liability on corporate officer); *see also Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997) (affirming a finding of joint liability under the NJCFA by the Appellate Division against an insider and corporate defendants).

**D. Negligent Misrepresentation & Common Law Fraud (Counts V & VI)**

Count V asserts claims for negligent misrepresentation. Citing to both New York and New Jersey law,[4] the Insiders argue that "Plaintiffs' negligent misrepresentation claims fail as a matter of law because … Plaintiffs have not sufficiently alleged the existence of a 'special relationship' between the Plaintiffs and Themis and Mr. Aris under New York law." Defs.' Br. at 20. That is wrong. As this Court explained in *Ebin I*, New York law requires the sellers to accurately label Capatriti "100% Pure Olive Oil" as a pomace oil product:

> [U]nder New York law, "olive oil" means oil "obtained solely from the fruit of the olive tree (olea europaea), to the exclusion of oils obtained using solvents or reestrification processes and of any mixture with oils of other kinds." N.Y. Agric. & Mkts. Law 204-a(1)(a). "Olive-pomace oil," by contrast, is defined as "oil obtained by treating olive pomace with solvents or other physical treatments." *Id.* § 204-a(1)(b). New York law makes it unlawful to sell "any compound or blended oil of any kind which purports to be an olive oil mixture unless the container thereof be permanently and conspicuously labeled 'compound oil' or 'blended oil' with a statement of the different ingredients thereof and the specific percentage of olive oil, the total percentage of other vegetable oils and the specific percentage of each other ingredient comprising more than one-half of one per centum of the mixture." *Id.* § 204-a(1). New York's Commissioner of Agriculture has also independently mandated that the proper label for Pomace is "olive-pomace oil" or "refined olive-pomace oil." N.Y. Comp. Codes R. & Regs. Tit. 1, § 269.1.

12/11/13 Memorandum at 5-6 (*Ebin I* Dkt. 73); *see also id.* at 9 ("Here, every relevant labeling standard described above … regard products sold in the manner of the defendant's product as mislabeled."). These obligations create a special relationship between the sellers and purchasers of olive oil, such that the latter would be expected to rely on proper labeling of pomace oil.

[4] It is unclear why the Insiders cite to New Jersey law, given that this Court certified a nationwide class for negligent misrepresentation and fraud under New York law in *Ebin I*. *See* 2/25/14 Memorandum at 17-19 (*Ebin I* Dkt. No. 98) ("Plaintiffs reply and the Court agrees that New York law governs the common law claims and that even if the Court must apply the law of numerous states, common issues still predominate."). For this reason, Plaintiffs will discuss their negligent misrepresentation and fraud claims only in the context of New York law.

Under New York law, claims for negligent misrepresentation and/or fraud may be brought against both a corporation and an officer or employee in his individual capacity. *See, e.g.*, *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899 (2d Cir. 1981) (addressing claims for negligent misrepresentation against the CEO of a corporate defendant, and stating: "[i]f the corporation is a mere shell for its owner, the employee-owner's actions may be viewed as having been taken simply in his own interest"); *Pludeman v. N. Leasing Sys., Inc.*, 890 N.E.2d 184, 188 (N.Y. 2008) (affirming denial of a motion to dismiss a fraud claim against certain individual defendants, who were the top managers of a corporate defendant, where "the fraud in this case was not an isolated incident, but rather a nationwide scheme that took place over a number of years" such that "[t]he very nature of the scheme, as alleged, gives rise to the reasonable inference – rebuttable though it may later prove to be – that the officers, as individuals and in the key positions they held, knew of and/or were involved in the fraud").

The Insiders argue that Plaintiffs' negligent misrepresentation and fraud claims are "devoid of any allegation of scienter or fraudulent intent as against Themis or Mr. Aris." Defs.' Br. at 23. But this Court already found that the *Ebin I* complaint adequately pleads scienter:

> Rule 9(b) allows a defendant's state of mind to be alleged 'generally,' but even to the extent that facts showing a 'strong inference of fraudulent intent' are required, they are more than adequately pled here.

12/11/13 Memorandum at 12 (*Ebin I* Dkt. 73). If the *Ebin I* complaint establishes scienter, then the instant Complaint must as well – the *Ebin I* complaint contains a subset of the allegations in the current Complaint. [redacted]

[redacted]

The Insiders also argue that "the direct claims against Themis [and Aristidis] for negligent misrepresentation and fraud also clearly fail to meet the heightened pleading standard under Rule 9(b)." Defs.' Br. at 22. That is wrong. Rule 9(b) requires that the complaint "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007). On a motion to dismiss, a court must read the complaint generously, and draw all inferences in favor of the pleader. *Id.*, *citing Yoder v. Orthomolecular Nutrition Inst., Inc.*, 751 F.2d 555, 562 (2d Cir. 1985).

Here, Plaintiffs' allegations satisfy the heightened pleading standard because they are sufficiently precise to allow Aristidis and Themis Kangadis to understand the nature of the allegations and to frame a responsive pleading. These allegations identify Aristidis and Themis Kangadis's fraudulent misrepresentations, where and when the misrepresentations were made, and they explain why they are false. Aristidis and Themis's misrepresentations are false because their product was actually 100% pomace oil, rather than "100% Pure Olive Oil." These statements on the tin violate a number of state, federal, and industry labeling standards, and the Court has already found them to be "literally false." *See NAOOA v. Kangadis Food, Inc.*, 13 Civ. 868 (JSR), 4/25/13 Opinion And Order at 17 (Dkt. 30). Likewise, Plaintiffs allege they relied on these misrepresentations in paying a substantial price premium for the product. Compl. ¶ 7.

---

[5] The Insiders' scienter argument is identical to the argument KFI made on this same point, and which this Court rejected in *Ebin I*. *Compare with* 5/3/13 Defendant's Memorandum of Law In Support Of Its Motion To Dismiss The Complaint at 19 (*Ebin I* Dkt. 11) ("Specifically, the Complaint is devoid of any allegation that would give rise to an inference of scienter, as there are no applicable rules or regulations concerning the labeling of Capatriti.").

In sum, the allegations in the Complaint provide "all of the essential factual background that would accompany the first paragraph of any newspaper story – that is, the 'who, what, when, where and how' of the events at issue." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276-77 (3d Cir. 2006) (citations omitted); *see also U.S. ex rel. Polansky v. Pfizer, Inc.*, 2009 WL 1456582, at *4 (E.D.N.Y. May 22, 2009) ("Rule 9(b) requires that a plaintiff set forth the who, what, when, where and how of the alleged fraud.").

**Who:** The Complaint specifically alleges that Aristidis and Themis Kangadis falsely labeled their product as containing "100% Pure Olive Oil." Compl. ¶ 2. [redacted]

**What:** The Complaint identifies and describes the product. *Id.* ¶¶ 5, 49-53. Plaintiffs allege Aristidis and Themis falsely represented that the product is "Olive Oil" or "100% Pure" olive oil in at least 9 places on its packaging: (i) the product's name (*i.e.*, Capatriti "100% Pure Olive Oil") is prominently placed on the top of the container and on all 4 sides, (ii) the representation "100% Pure" appears in large, vertical letters on the front and back of the container, (iii) the text, "Product contains high quality olive oil" appears below the Nutrition Facts, and (iv) one side of the container represents that "thanks to the Gourmet Factory, Americans can also enjoy this renowned olive oil." *Id.* ¶ 5.

**Where:** The Complaint explains that Aristidis and Themis Kangadis made the false statements directly on the product's label and packaging. *Id.* Moreover, both Plaintiffs allege where they purchased Capatriti "100% Pure Olive Oil." Plaintiff Ebin purchased it at a local grocery store in Bronx County, NY, and Plaintiff Jenkins purchased it at a local grocery store in New Jersey. *Id.* ¶¶ 9-10.

**When:** Both Plaintiffs allege when they purchased the product. Plaintiff Ebin purchased it in late 2012, and Plaintiff Jenkins purchased it in early 2013. *Id.* ¶¶ 9-10. And each alleges that they read and relied on the misrepresentations prior to purchase. *Id.*

**How:** The Complaint explains how Defendants' statements were false and misleading. "Calling a product 'olive oil' when it contains Pomace or any other non-olive oil is barred by an array of olive-oil making conventions, standard industry practice, international regulations, and federal and state laws." *Id.* ¶ 4. The Complaint also alleges Plaintiffs were induced to pay substantially more for

> Capatriti "100% Pure Olive Oil" based on the false representations. *Id.* ¶¶ 7, 9-10.

Accordingly, Plaintiffs' Complaint plainly meets Rule 9(b) pleading requirements.

The Insiders also argue that "Plaintiffs cannot maintain direct liability actions against Themis and Mr. Aris where they did not personally participate in the wrongful act." Defs.' Br. at 23. [redacted] These factual allegations more than suffice to state a claim that both Aristidis and Themis Kangadis "participated in or had knowledge of the tort," which is all that is required under New York law. *See* Defs.' Br. at 23, *citing Peguero v. 601 Realty Corp.*, 58 A.D.3d 556, 558, 873 N.Y.S.2d 17, 21 (N.Y. App. Div. 2009).

## V. THE CLASS PROOF OF CLAIM IN THE KFI BANKRUPTCY IS NOT RELEVANT TO THIS MOTION

The Insiders contend that by filing a class proof of claim in the KFI bankruptcy – which the Class Representatives were required to do in advance of an August 5, 2014 bar date to avoid waiving the claim against KFI – "plaintiffs have consented to the jurisdiction of the bankruptcy court to hear and determine the class claim against KFI in the first instance." Defs.' Br. at 24. That argument is a non-sequitur. The Plaintiffs' proof of claim in the bankruptcy court concerns only claims against KFI, which are not the claims in this case. The filing of a class proof of claim against a nonparty to this action is not grounds for dismissal of any claim in this action.

The Insiders' argument that the bankruptcy court should decide the class claim against KFI "in the first instance" is also a non-sequitur. The bankruptcy court may never decide the class proof of claim. Indeed, Judge Grossman's comments during the July 16, 2014 hearing strongly indicate that the bankruptcy court has no intention of deciding the class proof of claim

and will likely find a way to resolve the bankruptcy without determining the merits of the class proof of claim. In any event, there is no authority, and no valid legal reason, to expect an Article III court to stand idle waiting for a bankruptcy court, which may or may not address a similar claim against a related party.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the Insiders' motion to dismiss in its entirety.

Dated: August 26, 2014

Respectfully submitted,

By: */s/ Scott A. Bursor*
Scott A. Bursor

**BURSOR & FISHER, P.A.**
Scott A. Bursor
Joseph I. Marchese
Neal J. Deckant
Yitzchak Kopel
888 Seventh Avenue
New York, NY 10019
Telephone: (212) 989-9113
Facsimile: (212) 989-9163
Email: scott@bursor.com
jmarchese@bursor.com
ndeckant@bursor.com
ykopel@bursor.com

*Attorneys for Plaintiffs*